UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AARON R. DARE,

                          Petitioner,

    -against-                                            1:06-CR-0429 (LEK)

UNITED STATES OF AMERICA,

                          Respondent.

## MEMORANDUM-DECISION AND ORDER

Presently before this Court is Petitioner's Motion by order to show cause for a preliminary injunction and a restraining order brought pursuant to 42 U.S.C. § 1983.[1] Motion (Dkt. No. 74). For the reasons set forth, Petitioner's Motion is denied.

### I.    BACKGROUND

*Pro se* Petitioner Aaron R. Dare ("Petitioner" or "Dare") is currently incarcerated and serving his sentence at Federal Medical Center, Devens ("FMC Devens"). FMC Devens is a Bureau of Prisons ("BOP") administrative facility that houses federal offenders who require specialized or

---

[1] "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations.'" Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004) (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). Petitioner brought this Motion pursuant to 28 U.S.C. § 2255. Motion at 1. However, considering the entirety of Petitioner's submissions along with the liberal construction that must be given the submissions of a *pro se* party, the Court concludes that Petitioner should have brought these claims pursuant to 42 U.S.C. § 1983, alleging that the Bureau of Prisons violated the Eighth Amendment of the Constitution by failing to properly treat Petitioner and will construe the pleadings accordingly. See, e.g., Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (noting that the Court must read *pro se* parties' "supporting papers liberally, and [] interpret them to raise the strongest arguments that they suggest").

long-term medical care.  Declaration of Herbert Beam, M.D. ("Beam Decl.") ¶ 2.  Petitioner suffers from dilated cardiomyopathy, hypertension and dyslipimedia, and has a history of left ventricle thrombus.  See generally Motion; Beam Decl. ¶ 7.[2]

On June 22, 2009, Petitioner filed an application for an order to show cause for a preliminary injunction and restraining order with this Court.  Dkt. No. 74.  Specifically, Petitioner filed this Motion requesting that this Court issue an order directing the Respondent United States ("Respondent" or the "Government"): (i) to provide the Petitioner with the Recorder to his surgically implanted loop monitor; (ii) to immediately adjust Petitioner's beta-blocker medication to the level and dosage ordered by Respondent's contract specialist; (iii) to reinstate Petitioner's Monitoring and Anti-Coagulation Clinics, which monitor Petitioner's (1) heart rate, blood pressure and weight and (2) anti-coagulation levels; and (iv) to reinstate Petitioner's monthly blood testing to monitor his co-morbid conditions such as hypertension and hyperlipidemia, as well as his kidney and liver functions.  On June 23, 2009, this Court directed Respondent to show cause why the requested order should be not be granted.  Dkt. No. 75.  The Government submitted its response on July 8, 2009.  Dkt. No. 76.  Petitioner subsequently requested an extension to submit his reply, which this Court granted.  Dkt. No. 77.  Petitioner was ordered to postmark his response by July 27, 2009.  Id.  Petitioner then submitted two replies which were both postmarked within the allotted time period and filed on July 27, 2009 and July 31, 2009, respectively.  Dkt. Nos. 78, 79.[3]

## II.     PRELIMINARY INJUNCTION STANDARD

---

[2] Notably, when this Court sentenced Petitioner, it recommended that the Bureau of Prisons place him at a facility that can address this preexisting medical condition.  Dkt Nos. 38, 39.

[3] Because of Petitioner's *pro se* status, this Court will consider both replies.

A party seeking a preliminary injunction must show, "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008) (citation omitted). "'Yet, the standard is even higher where, as here, the movant seeks a mandatory injunction, i.e. an injunction that 'alter[s] the status quo by commanding some positive action.'" Dichiara v. Pataki, 1:06-cv-6123-ENV-LB, 2007 U.S. Dist. LEXIS 16068, at *8 (E.D.N.Y. Mar. 7, 2007) (quoting Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995)). "'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). "When seeking such an injunction, a movant 'must show a 'clear' or 'substantial' likelihood of ultimate success or that it would suffer 'extreme or very serious damage' absent preliminary relief.'" Diachiara, 2007 U.S. Dist. LEXIS 16068, at *8 (quoting Cherry River Music Co. v. Simitar Entm't, Inc., 38 F. Supp. 2d 310, 316 (S.D.N.Y. 1999)).

**III.   DISCUSSION**

"The Cruel and Unusual Punishments Clause of the Eight Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006); see also Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994); U.S. CONST. amend. VIII. "However, a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities; instead, the Constitution entitles a prisoner only to reasonable measures to meet a substantial risk of harm." Diachiara, 2007 U.S. Dist. LEXIS 16068,

at *8-9 (citing Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997)).  To succeed on an Eighth Amendment claim, the prisoner must show that the defendants were not merely negligent, but deliberately indifferent in failing to provide healthcare.  Chance v. Amstrong, 143 F.3d 698, 702 (2d Cir. 1988); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976) ("[A]n inadvertent failure to provide adequate medical care [is insufficient to sustain a constitutional claim because] . . . negligen[ce] in . . . diagnosing or treating a medical condition does not state a valid claim"); Diachiara, 2007 U.S. Dist. LEXIS 16068, at *9 (citing Salahuddin, 467 F.3d at 280).  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Chance, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment is adequate.  Chance, 143 F.3d at 703; see also Diachiara, 2007 U.S. Dist. LEXIS 16068, at *9 ("If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie") (citation omitted).  Here, while this Court recognizes the seriousness of Petitioner's medical condition, Petitioner has not sustained the heavy burden necessary to warrant the extraordinary relief sought.

### A. Loop Monitor

The Court first notes that Petitioner's request for a personal recorder for his loop monitor has been fulfilled; Petitioner received the personal recorder on July 1, 2009.  See Beam Decl. ¶¶ 8-12; see also Pet.'s Reply (Dkt. No. 78) at 3.  However, "Petitioner is not persuaded and suggests that the Court not be persuaded that the risk . . . that there is no cognizable danger of recurrent violation."

Pet.'s Reply at 3.  Consequently, "Petitioner requests that the Court include in its Order a narrowly drawn, temporary injunction for at least ninety (90) days, or until more permanent injunctive relief may be granted by the Court at the close of this case, that the Bureau of Prisons be enjoined from removing or confiscating Petitioner's Loop Monitor."  Id. at 3-4.

Petitioner, however, offers nothing more than hearsay and speculation to support his concern.  Courts may rely on hearsay evidence on a motion for injunctive relief, especially where the information is within the possession of the defendant.  See, e.g., Mullins v. City of New York, __ F. Supp. 2d __ , 2009 WL 1616005, *5 (S.D.N.Y. June 9, 2009).  However, "while affidavits may be considered on a preliminary injunction motion, such a motion should not be resolved on the basis of affidavits that evince disputed issues of fact."  Davis v. New York City Housing Authority, 166 F.3d 432, 437-38 (2d Cir. 1999) (citing Forts v. Ward, 566 F.2d 849, 851 (2d Cir. 1977)); see also Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1204 (2d Cir. 1970) (noting the "undesirability of issuing temporary injunctions solely on the basis of affidavits, particularly in cases where everything turns on what happened and that is in sharp dispute.") (internal quotations omitted); Conveyor & Caster Corp. v. Cruzado, 93-CV-0519, 1994 WL 49694, at *2 (W.D.N.Y. Feb. 18, 1994) ("Even if imminent irreparable harm were established, [petitioner's] motion would be denied because there are core factual disputes that this Court is being asked to decide on the basis of affidavits alone.").  Accordingly, not only has Petitioner's request been fulfilled but Petitioner's allegations are also not sufficient to warrant the injunctive relief requested.

### B.   Beta-Blocker Adjustment

Petitioner requests that his beta-blocker medication be immediately adjusted to the level and dosage ordered by Respondent's contract specialist.  Motion at 1.  This request is denied because the

subject beta-blocker recommendation by the contract specialist was qualified with "as tolerated" and the BOP physicians had medical concerns about increasing Petitioner's beta-blocker medication in light of Petitioner's other medications. Beam Decl. ¶¶ 14-24.

More specifically, when Petitioner arrived at FMC Devens on September 18, 2008, he had been taking the beta-blocker Coreg, the trade version of Carvedilol ("Coreg"). Id. ¶¶ 14-15. On September 22, 2008, Petitioner was switched from Coreg to Metoprolol, the "pharmacological equivalent of Coreg," which has the "same clinical outcome." Id. ¶¶ 16-18. In October 2008, a consulting cardiologist recommended that Petitioner be placed on Coreg "as tolerated." Id. ¶ 19. Coreg was again recommended in November 2008 when Petitioner was discharged from a local hospital. Id. ¶ 20. Consequently, Petitioner was approved for Coreg. Id. ¶ 21. At that same time, Petitioner's dose of Lisinopril was increased and he was also started on a new medication, Hydralazine Isosorbide. Id.

According to Respondent, Petitioner's dose of Coreg has not been increased according to the consulting cardiologist's recommendation for two reasons: 1) concerns that higher doses of Coreg "can lead to a fatal drop in blood pressure and pulse," which is why the recommendation was qualified with "as tolerated," and 2) in light of Petitioner's increased dose of Lisinopril and the fact that he was started on Hydralazine Isosorbide, the medical staff was concerned about changing too many variables at one time. Id. ¶¶ 22-24. Moreover, in spite of not increasing the dosage of Coreg, Petitioner has "experienced [an] improvement in his symptoms." Id. ¶ 24.

Courts have repeatedly held that disagreements over treatment do not rise to the level of Constitutional violations. Chance, 143 F.3d at 703 (an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So if the treatment is adequate, the fact that a

6

prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Green v. McGinnis, 515 F.Supp. 379, 384 (W.D.N.Y. 2007) ("Although [petitioner] may subjectively believe his care was not adequate or correct, that difference of opinion does not demonstrate deliberate indifference and does not give rise to an Eight Amendment claim."). There is no evidence here that Respondent has been deliberately indifferent to Petitioner's pharmaceutical needs. In fact, there is overwhelming evidence indicating that Respondent has been monitoring and adjusting Petitioner's beta-blocker medication, as needed. Accordingly, this Court finds no constitutional violation warranting the relief requested.

### C.    Monitoring and Anti-Coagulation Clinics

In his Motion, Petitioner requests that Respondent reinstate his "Monitoring and Anti-Coagulation Clinics, which monitor Petitioner's (1) heart rate, blood pressure and weight and (2) anti-coagulation levels." Motion at 1. Petitioner now concedes that "[t]he one monitoring issue which truly has been resolved and has become moot is the request for an injunction ordering Petitioner to be monitored regularly in the Anti-Coagulation Clinic" and "withdraws his request for a preliminary injunction ordering the Bureau of Prisons to monitor him in the Anti-Coagulation Clinics." Reply at 15-16. Accordingly, this Court will only address Petitioner's remaining monitoring request.

Specifically, Petitioner is requesting that his heart rate and blood pressure be "monitored prior to taking each and every dose of the aforementioned medications, which would amount to three (3) times a day," and that his weight be measured daily. Reply at 12. According to Petitioner's physician, "[a]t this time, there is no clinical indication for inmate Dare's heart rate, blood pressure and weight to be regularly monitored in a clinic." Beam Decl. ¶ 27. Currently,

7

Petitioner's "vital signs are monitored when he has a clinical encounter with medical staff, and his frequency of vital sign monitoring is sufficient for his medical condition." Id. ¶ 27. In fact, Petitioner's vitals have been checked approximately eleven (11) times between the period of September 22, 2008 and July 1, 2009. Id. ¶ 28. This Court reiterates that "a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities; instead, the Constitution entitles a prisoner only to reasonable measures to meet a substantial risk of harm." Diachiara, 2007 U.S. Dist. LEXIS 16068, at *8-9 (citing Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997)). The current treatment is "reasonable," "adequate" and in no way amounts to the deliberate indifference necessary to sustain a Constitutional violation. Accordingly, Petitioner's request for monitoring of his vitals and weight is denied.

### D. Monthly Blood Testing

Lastly, Petitioner requests monthly blood testing to monitor his co-morbid conditions such as hypertension and hyperlipidemia, as well as his kidney and liver functions. Motion at 1. However, according to Petitioner's physician, monthly monitoring blood testing "is not clinically indicated." Beam Decl. ¶ 36. "Given inmate Dare's current medical status, blood tests . . . every three months are sufficient to monitor his health conditions. More frequent blood tests are only medically indicated if his medications are changed or his health is not stable." Id. ¶ 37. Moreover, Petitioner "has had blood tests consistent with these guidelines." Id. ¶ 36. Accordingly, this Court finds that Petitioner's current blood testing schedule is reasonable and does not give rise to an Eighth Amendment Violation. See Diachiara, 2007 U.S. Dist. LEXIS 16068, at *8-9; Chance, 143 F.3d at 703.

### IV. CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Petitioner's Motion for a preliminary injunction and temporary restraining order (Dkt. No. 74) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of the Memorandum-Decision and Order on all of the parties.

**IT IS SO ORDERED**.

DATED:   August 10, 2009
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge